UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PAUL RAY GADOURY                          :
                                          :
          v.                              :        C.A. No. 08-140S
                                          :
MICHAEL J. ASTRUE, Commissioner           :
Social Security Administration            :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on April 21, 2008 seeking to reverse the decision of the Commissioner.  On February 27, 2009, Plaintiff filed a Motion to Reverse or Remand the Decision of the Commissioner.  (Document No. 7).  On March 27, 2009, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 8).

This matter has been referred to me for preliminary review, findings and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that the Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 8) be GRANTED and that the Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner (Document No. 7) be DENIED.

## I.        PROCEDURAL HISTORY

Plaintiff filed an application for DIB on October 12, 2004, alleging disability as of March 17, 2004. (Tr. 17). The application was denied initially (Tr. 31-33) and on reconsideration. (Tr. 36-38). Plaintiff requested an administrative hearing. (Tr. 39). On February 14, 2007, Administrative Law Judge Barry H. Best ("ALJ") held a hearing at which Plaintiff, represented by counsel and a vocational expert ("VE") appeared and testified. (Tr. 393-419). The ALJ issued a decision on March 8, 2007 finding that Plaintiff was not disabled. (Tr. 14-26). The Appeals Council denied Plaintiff's request for review on February 21, 2008. (Tr. 6-9). A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred by failing to accord adequate weight to the opinion of Plaintiff's treating surgeon. Plaintiff also argues that the ALJ improperly discredited Plaintiff's testimony as to pain.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record to support the ALJ's decision.

## III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of

examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. <u>See</u> 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (<u>see</u> 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). <u>See also</u> <u>Dudley v. Sec'y of Health and Human Servs.</u>, 816 F.2d 792, 794 (1st Cir. 1987).

## B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. <u>Heggarty v. Sullivan</u>, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. <u>See</u> 42 U.S.C. § 406; <u>Evangelista v. Sec'y of Health and Human Servs.</u>, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. <u>Id.</u> However, where an unrepresented claimant has not waived the right to retained

counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

####    C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

####    D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.

20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

## E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276

F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as

consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)  The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)  Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)  Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)  Treatment, other than medication, for relief of pain;
>
> (5)  Functional restrictions; and
>
> (6)  The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

## 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was thirty-eight years old on the date of the ALJ's decision.  (Tr. 398).  Plaintiff earned a Bachelor's Degree in English (Tr. 54, 399) and had previously worked as a behavioral specialist, counselor and janitor/security guard.  (Tr. 48, 67, 413).  Plaintiff alleges disability due to lower back problems, depression and anxiety.  (Tr. 47, 78, 402).

On March 17, 2004, Plaintiff slipped on ice and fell at work, and, on March 28, 2004, he sought treatment at the Atmed Treatment Center, complaining of back pain.  (Tr. 104).  X-rays of the back showed evidence of a prior surgery but were otherwise unremarkable, (Tr. 105), and Dr. Daniel Regan released Plaintiff to modified duty at the sedentary work level with lifting, pushing and pulling limited to ten pounds.  (Tr. 103, 106).  Thereafter, Plaintiff saw chiropractor Joseph Lancellotti for chiropractic care.  (Tr. 183-185).  By the end of April 2004, Plaintiff reported that his symptoms had improved, and Dr. Lancellotti felt that his injuries were resolving.  (Tr. 186).

In July 2004, Plaintiff saw Dr. Michael Olin, a Neurosurgeon, and on exam, Plaintiff had limited anterior range of motion and motor strength of 5/5 in his legs.  (Tr. 204).  An MRI showed a moderate disc herniation at the L5-S1 level, a disc protrusion and mild neural encroachment mostly on the left at L4-5, (Tr. 205, 275), and an EMG was consistent with right sided S-1

radiculopathy.  (Tr. 207).  Dr. Alla Korenneya examined Plaintiff in August 2004 and found that Plaintiff was in no apparent distress and that a sensory exam was symmetrical, motor strength was 5/5 in all groups, and a straight leg raising test was positive on the right.  (Tr. 205).  Dr. Korenneya assessed chronic moderate right sided S-1 radiculopathy.  Id.  Dr. Olin recommended a course of physical therapy.  (Tr. 208).

Plaintiff started physical therapy in August 2004, (Tr. 112), and by the next month, had reported to his physical therapist that he was feeling a lot better and could stand and walk for a significant amount of time. (Tr. 123).  His trunk range of motion, lower extremity strength, and joint range of motion were within normal limits, and he exhibited no guarding and no spasms.  Id. Physical Therapist Lisa Pickett, Dr. Olin and Dr. Lancellotti concluded that after seven visits, Plaintiff made "excellent progress" in physical therapy and had met all his short-term and long-term goals.  Id.  Plaintiff could return to walking with no movement restrictions, and he reported a dramatic decrease in pain.  Id.  Three days later, however, on September 27, 2004, Plaintiff returned complaining of a sudden onset of unbearable pain, and he was referred to Dr. Olin for further evaluation.  Id.  In October 2004, Dr. Olin reported that Plaintiff continued to be symptomatic despite physical therapy, with radicular symptoms in both legs, worse on the left, as well as positive straight-leg rasing tests and reduced range of motion.  (Tr. 210).

In November 2004, Plaintiff reported to the Commissioner that his daily activities consisted of eating breakfast, reading, visiting the library, visiting with relatives, going to the post office and watching television.  (Tr. 56).  He had no problems with personal care, and he could use a riding lawn mower, drive, shop, pay bills and manage bank accounts.  (Tr. 57-59).

Plaintiff returned to Dr. Lancellotti in December 2004, reporting that he had not been involved in any active treatment and had only been taking Advil and applying ice or heat as needed. (Tr. 188).  Plaintiff had been walking up to two miles a day but then developed lower back pain radiating into his left leg.  Id.

Also in December 2004, Dr. Stephen DiZio performed a psychiatric evaluation of Plaintiff, who reported that he was primarily disabled by back pain.  (Tr. 140).  Plaintiff experienced periods of depression since his teen years, as well as anxiety and some substance abuse, most recently with respect to medication prescribed for his back pain.  (Tr. 140-141).  Plaintiff was receiving private disability benefits, and he spent his free time watching television, reading and visiting the library. (Tr. 141-142).  Plaintiff did not describe difficulties in concentration or psychiatric limitations in task performance, and he stated that he could read for hours.  (Tr. 142).  On mental status exam, Plaintiff was alert and well oriented, had a neutral and appropriate affect and did not appear to be in any distress.  Id.  Plaintiff described limitations resulting from his physical condition but minimized the extent of any emotional limitations and described mild to moderate limitations in personal and social adjustment.  (Tr. 142-143).  Dr. DiZio assessed a panic disorder with agoraphobia (mild to moderate), major depression, recurrent (mild to moderate) and narcotic dependence.  (Tr. 142).

In January 2005, state agency Psychologist G. Clifford Gordon assessed some moderate mental limitations (Tr. 144-145) and concluded that Plaintiff could understand and remember data in the workplace; could attend to routine, repetitive tasks in two-hour increments during a full workday; could participate on team or public tasks and could follow through on routine, repetitive

tasks, and adapt to ordinary change.  (Tr. 150).  Dr. John Gambill subsequently agreed with Dr.

Clifford's assessment.  (Tr. 179-182).

In February 2005, state agency Physician Youssef H. Georgy opined that Plaintiff had

physical capacities consistent with the performance of light work, with standing for between two

and six hours during a workday and limited pushing or pulling with the lower extremities.  (Tr. 166).

He further opined that Plaintiff could perform postural movements occasionally and needed to avoid

concentrated exposure to hazards.  (Tr. 167, 169).  Dr. Harris Faigel subsequently opined that

Plaintiff could stand/walk for four hours and he otherwise agreed with Dr. Georgy's assessment.

(Tr. 175-176).  Dr. Stephen Fish also subsequently agreed with Dr. Georgy's assessment.  (Tr. 172).

In January and February 2005, Plaintiff received epidural steroid injections from Dr.

Christopher Ottiano, after which he noted an improvement in his overall symptoms.  (Tr. 177-178).

He returned to Dr. Lancellotti's office and reported pain relief for two to three days after receiving

the injections, after which his pain returned, which reportedly made it difficult for him to sit or stand

for more than fifteen minutes at a time.  (Tr. 190).  In March 2005, Plaintiff reported that his back

pain and sciatica improved somewhat with injections and Ultracet.  (Tr. 192).

In April 2005, Plaintiff returned to Dr. Olin and reported that his pain was improved.  (Tr.

213).  On exam, he had anterior range of motion of sixty degrees with easy re-extension and motor

strength of 5/5.  Id.  Dr. Olin opined that Plaintiff was successful in living with his back problem and

that surgery would not promise to relieve his symptoms, and he referred Plaintiff to a pain clinic.

Id.  In May 2005, Plaintiff saw Dr. Ashraf Farid at the New England Pain Institute, complaining of

lower back and left leg pain.  (Tr. 314).  Plaintiff reported to Dr. Farid that he was self-employed

– buying houses, fixing them up and then selling them.  Id.  On exam, he walked normally and

-14-

could perform toe and heel standing normally.  (Tr. 315).  He had moderately decreased range of motion, no tenderness and a positive straight leg rasing test on the right.  Id.  Dr. Farid assessed lumbar radiculopathy, right S-1 radiculopathy, and a small to moderate disc herniation at L5-S1.  Id.  He recommended a trial series of selective nerve root blocks with steroids and local anesthetics.  Id.  Dr. Farid subsequently administered transforaminal, left-sided, epidural steroid injections and performed a selective nerve root block.  (Tr. 230).  In June, Plaintiff was released back to work at full duty as a mental health counselor.  (Tr. 237).

In June 2005, Plaintiff reported to the Commissioner that he spent his time reading and sleeping and that he had no problems with personal care, did not know how to cook and that he could drive, shop and pay bills.  (Tr. 86-89).

In July 2005, Dr. Steven Hirsch performed a psychological evaluation of Plaintiff, finding that he was alert, cooperative and oriented and did not appear to be in any discomfort, and that his coordination, posture, and gait were grossly intact.  (Tr. 252).  He was able to focus, concentrate, attend to the questions presented, and his social functioning and reasoning skills appeared to be functional.  Id.  He had a mildly depressed affect and complained of mild anxiety, and he had no difficulty sleeping and had a good appetite.  Id.  Plaintiff was able to attend to his own household chores and personal hygiene needs.  Id.  He had experienced low-grade chronic anxiety and depression throughout most of his life.  (Tr. 252-253).  Dr. Hirsch assessed an anxiety disorder and a dysthymic disorder.  (Tr. 253).  He further reported that Plaintiff's daily activity skills were quite functional, he had no problem with relationship and social issues, no major problems with concentration and he could attend to and complete tasks required in everyday household routines.  (Tr. 253-254).

In July 2005, state agency Psychologist Michael Slavit assessed some moderate mental limitations (Tr. 269-270) and concluded that Plaintiff would have difficulty with complex tasks and sustained attention over extended periods but would have no barriers to sustaining work for routine tasks at two-hour periods over an eight-hour day. (Tr. 271). He further opined that Plaintiff could sustain superficial relationships on the job and could avoid workplace hazards and make routine work-related decisions. Id.

Dr. Joseph Rodgers reported that he saw Plaintiff in December 2005, at which time "[h]is pain was relatively well controlled with methadone" (Tr. 361) and that methadone "has been particularly helpful in treating [Plaintiff's] pain" (Tr. 362). Dr. Rodgers' treatment note from December 8, 2005 indicates that Plaintiff had a normal psychiatric exam, including normal attention and concentration. (Tr. 367).

In January 2006, Plaintiff reported that he had been doing well, with better pain relief when taking 20 mg of methadone. (Tr. 373). He had a normal psychiatric exam, and Dr. Rodgers assessed his back pain as stable on medication. Id. Plaintiff reported doing some walking and bending in February 2006, and noted that a neighbor had commented about his increased activity. (Tr. 372). He had a normal psychiatric exam. Id. By March 2006, Plaintiff reported that his pain had improved overall, with improved sleep, and he had a normal psychiatric exam and reported that he was going on a trip to Florida. (Tr. 371).

In April 2006, Dr. Olin examined Plaintiff and found that his anterior range of motion of the lower back was reduced to 60 degrees and that he had motor strength of 5/5. (Tr. 324). Later that month, Plaintiff reported to Dr. Rodgers that he had increased pain in the right buttock and increased anxiety. (Tr. 370). On exam, he had some mild tenderness to palpation on the left side of his back,

pain on straight-leg raising tests, brisk reflexes and motor strength of 5/5.  Id.  He had an anxious mood but an otherwise normal psychiatric exam, and Dr. Rodgers assessed chronic lumbar pain with radiculopathy and mild social anxiety.  Id.  Plaintiff subsequently reported improved anxiety with Impramine, and his psychiatric exams in June and July 2006 were both normal.  (Tr. 368-369).

On September 14, 2006, Plaintiff saw Dr. Vincent Marcaccio and reported getting "acceptable pain relief w/ current meds." (Tr. 304).  He had mild to moderate diffuse lubrosacral tenderness and a good affect.  Id.  On October 20, 2006, Plaintiff returned to Dr. Marcaccio, who reported "adequate analgesia with his current regime." (Tr. 303).

In February 2007, Dr. Olin completed a physical functional capacity questionnaire at the request of Plaintiff's counsel in which he opined that Plaintiff could sit or stand for thirty minutes at a time and for two hours during an eight-hour workday and needed to walk every sixty minutes for fifteen minutes.  (Tr. 352).  He further opined that Plaintiff needed to alternate between sitting and standing at will and needed hourly breaks for fifteen minutes and could occasionally lift ten pounds.  (Tr. 353).  He felt Plaintiff could reach for twenty-five percent of an eight-hour workday, could never stoop or crouch, would miss more than four days of work per month and needed to avoid temperature extremes and fumes.  (Tr. 354).  He indicated that these symptoms and limitations would have been in effect since July 1996.  (Tr. 355).  In addition, he indicated that Plaintiff had medical signs consistent with the requirements of Listing 1.04(A) since 1996.  (Tr. 356-357). Finally, he opined that Plaintiff's pain would be incapacitating and would worsen with physical activity, that Plaintiff's medications would severely limit his effectiveness in the workplace and that he was unable to function at a productive level.  (Tr. 359).

Also in February 2007, Dr. Marcaccio completed similar questionnaires at the request of Plaintiff's counsel in which he indicated that Plaintiff may be distracted from task performance and may have difficulty completing tasks but that his medication levels "will not create serious work problems." (Tr. 376). He also opined that Plaintiff had medical signs consistent with the requirements of Listings 1.04(A) and 1.04(C). (Tr. 377-378).

Plaintiff testified that he had settled a workers' compensation claim in December 2005 and also received $685.00 per month in private long-term disability benefits. (Tr. 401). He testified that he was disabled because he would need to lie down for several minutes after any prolonged sitting or standing and that his concentration was impaired due to his pain. (Tr. 402). He testified that in addition to eating meals and performing self-care tasks, he spent his time reading, watching television, using a computer, visiting with relatives and doing light shopping. (Tr. 405-406). He owned his own car and could drive. (Tr. 407). He estimated that he could lift under ten pounds, stand for five minutes and sit for thirty minutes. Id. He testified that his medications made him tired, interfered with concentration and caused him to perspire. (Tr. 408). He testified that his pain was mostly in his back and left leg. (Tr. 409).

### A.   The ALJ Property Evaluated the Treating Physician's Opinion

The ALJ decided this case adverse to Plaintiff at Step 5. He concluded that Plaintiff's degenerative lumbar disc disease, mild obesity, depression and anxiety were "severe" impairments as defined in 20 C.F.R. § 404.1521 but not of Listing-level severity. (Tr. 19-22). As to RFC, the ALJ assessed that Plaintiff could perform a range of sedentary work limited by moderate impairments in concentration/attention and social interaction. Based on this RFC and testimony from the VE, the ALJ found no disability, as Plaintiff was capable of making a successful adjustment

to other work existing in significant numbers.  (Tr. 26).  Those unskilled, sedentary jobs included assembler, press operator, inspector, hand packager and office clerk.  Id.

Plaintiff's primary argument on appeal is that the ALJ erred in his evaluation of Dr. Olin's opinions limiting him to an RFC for less than sedentary work and that he met Listing 1.04(A). (Document No. 7 at p. 14).  Plaintiff contends that these opinions should have been accorded controlling weight because they are well supported by and consistent with the medical record.  Id.

Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record.  20 C.F.R. § 404.1527(d);  see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors.").  The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations.  20 C.F.R. § 404.1527(d)(1).  If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given.  20 C.F.R. § 404.1527(d)(2).

As noted above, Plaintiff resumed treating with Dr. Olin (a Neurosurgeon) in July 2004 for his March 17, 2004 back injury.  (Tr. 204).  Although there are no treatment records on file, it appears that Dr. Olin treated Plaintiff beginning in 1996 and performed back surgery on him in 2000.  (Tr. 350-351).  According to the administrative record (Exhibits 16F and 31F), Plaintiff saw Dr. Olin on five occasions in 2004 and 2005 related to the March 17, 2004 injury.  Plaintiff was

referred to physical therapy. (Tr. 208, 210). Dr. Olin also referred Plaintiff for injection therapy. (Tr. 210, 212). Again, according to the administrative record (Tr. 213), Dr. Olin discontinued his treatment on April 27, 2005 and referred Plaintiff to a pain clinic. He indicated that he would not see Plaintiff again, "unless surgery is imminent." Id. Dr. Olin also noted his opinion that Plaintiff "has been successful in living with his back problems." Id.

Nearly two years later (on February 13, 2007), Dr. Olin filled out two questionnaires at the request of Plaintiff's counsel. (Ex. 36F). The first, a physical RFC questionnaire, assessed limitations which would not permit the performance of even sedentary work. (Tr. 352-354). The second form indicated that Plaintiff's back impairment met Listing 1.04(A). (Tr. 356).

The ALJ thoroughly discussed the medical evidence. (Tr. 20-25). Ultimately, the ALJ favored the consulting opinions of Dr. Georgy (Ex. 9F), Dr. Fish (Tr. 172), and Dr. Faigel (Ex. 10F) over the opinions of Dr. Olin. (Tr. 24-25). The ALJ found that the consulting opinions (upon which he relied in part in assessing Plaintiff's RFC) were "consistent with the record as a whole and not contradicted by a competent, well supported, functional capacity assessment from a treating source" and thus "entitled to significant probative weight." (Tr. 24). (emphasis added). As to Dr. Olin's assessment that Plaintiff was, among other restrictions, only capable of walking one-half of a city block, could not continuously sit or stand for more than thirty minutes, could sit and stand/walk for no more than two hours each in an eight-hour workday, and must walk for at least fifteen minutes after each hour worked (Tr. 386-387), the ALJ found "no support in the record as a whole" and "afforded [it] only diminished probative weight." (Tr. 24-25). Similarly, the ALJ gave minimal probative weight to Dr. Olin's assessment that Plaintiff met Listing 1.04(A). (Tr. 21 n.5). The ALJ

-20-

concluded that Dr. Olin's opinion on Listing 1.04(A) was not supported by the record, "including his own reports which do not document motor or reflex loss." (Tr. 21).

Under 20 C.F.R. § 404.1527(e)(2), (3), a claimant's RFC and the applicability of a Listing to a claimant's impairments are issues reserved to the Commissioner, and no special significance is given to the source of opinions on such issues. These are not considered medical opinions. 20 C.F.R. § 404.1527(e). Accordingly, Dr. Olin's status as a treating physician is not entitled to any "special significance" in assessing the opinions rendered by him in Exhibit 36. However, even applying 20 C.F.R. § 404.1527(d)(2), the ALJ gave "good reasons" for his decision to give lesser weight to Dr. Olin's opinions and more weight to the opinions of Dr. Georgy, Dr. Fish and Dr. Faigel. The ALJ also discussed and considered Plaintiff's testimony, the record as to his response to treatment and evidence as to his daily activities. (Tr. 20-25). Finally, Dr. Olin indicated that the significant restrictions outlined in his 2007 questionnaire dated back to July 1996. (Tr. 389). However, the record reflects that Plaintiff was working at the time of his 2004 injury and a 2005 report from the Pain Institute that Plaintiff was "self employed" at that time buying, fixing and selling houses. (Tr. 314). In addition, a 2005 medical record indicated that Plaintiff was released to return to "work, full duty" as a mental health counselor. (Tr. 237). "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1 (1st Cir. 1987)). In other words, the issue presented is not whether this Court would have found Plaintiff's back impairment to be disabling but whether the record contains sufficient support for the

ALJ's non-disability finding.  Plaintiff has shown no error in the ALJ's evaluation of the medical evidence.

### B.      The ALJ Properly Evaluated Plaintiff's Pain Complaints

Plaintiff argues that his allegations that pain precluded him from sitting for prolonged periods of time was a "critical issue" and that the ALJ's failure to justify the diminished weight accorded to his testimony as to pain requires remand.  (Document No. 7 at p. 17).  In his decision, the ALJ relied upon the Avery factors and concluded that Plaintiff's allegations regarding his limitations and degree of pain were "not of sufficient severity or credible to the extent to persuade [the ALJ] that...[Plaintiff is] incapable of performing" the level of unskilled, sedentary work within the RFC assessed.  (Tr. 23-24).

Although the ALJ realized and accepted that Plaintiff's impairments would result in "some degree of pain other symptomatology and functional limitation," he did not find Plaintiff's allegations to be totally credible.  (Tr. 22-24).  He did, however, credit them somewhat, as he imposed a sedentary RFC when the consulting physicians opined that Plaintiff could perform a limited range of light work.  The testimony in issue from Plaintiff was that he could not stand for more than five minutes at a time and could not sit for more than thirty minutes before he would have to "[e]ither stand up or, just change my position."  (Tr. 407).  (emphasis added).  In his RFC assessment, the ALJ limited Plaintiff to unskilled, sedentary work with sitting for at least six hours in a workday and standing and/or walking for two hours in a workday.  (Tr. 22).  A sedentary job is one which involves sitting most of the time, but may involve walking and standing occasionally to carry out job duties.  20 C.F.R. § 404.1567(a).

Plaintiff contends that "<u>none</u> of the ALJ's reasons for discrediting [his] allegations are valid." (Document No. 7 at p. 18).  (emphasis added).  For instance, Plaintiff contends that the ALJ erred by considering the lack of any finding of reflex or motor loss in assessing the credibility of his allegations of functional loss because that fact was also considered at Step 3 in finding that Plaintiff did not meet Listing 1.04(A).  Plaintiff cites no legal support for this argument (Document No. 7 at pp. 18-19) and it makes no sense.  If Plaintiff had such a loss, it would reasonably have provided support to his claimed degree of standing/walking limitations.  As to sitting, the ALJ properly found Plaintiff's claimed limitations to be inconsistent with some of the activities reported by him.  For instance, Plaintiff reportedly could "read for hours," (Tr. 142), cut the lawn on a "rider mower," (Tr. 58), and travel to Florida, (Tr. 371).  Further, Plaintiff did not testify that it was impossible for him to sit for more than thirty minutes.  Rather, he testified that he would simply need to either stand up <u>or</u> change positions.  (Tr. 407).  The VE testified that a requirement that Plaintiff be permitted to stand at will would reduce the numbers of existing jobs consistent with Plaintiff's RFC because some jobs are less amenable to moving around or change.  (Tr. 415).  However, he opined that the number (20,000 positions) would be reduced by "about a third."  <u>Id.</u>  The bottom-line is that Plaintiff's contention that <u>none</u> of the ALJ's reasons for discrediting his testimony were valid is an overstatement.  The ALJ articulated sufficient reasons for his credibility assessment and, since those reasons are supported by substantial evidence, they are entitled to deference.  Plaintiff has shown no reversible error in the ALJ's credibility assessment.

## VI.    CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 8) be GRANTED and that Plaintiff's

Motion to Reverse or Remand the Commissioner's Decision (Document No. 7) be DENIED.  I

further recommend that the District Court enter final judgment in favor of the Commissioner.

Any objection to this Report and Recommendation must be specific and must be filed with

the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72.

Failure to file specific objections in a timely manner constitutes waiver of the right to review by the

District Court and the right to appeal the District Court's decision.  See United States v. Valencia-

Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605

(1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 29, 2009